RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0102p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CONTINENTAL CASUALTY COMPANY,
　　　　　　　　　　*Plaintiff-Appellee*,

　　　*v.*

LAW OFFICES OF MELBOURNE MILLS, JR.,
PLLC; MELBOURNE MILLS, JR., (10-5813);
MILDRED ABBOTT, et al. (10-5814),
　　　　　　　　　　*Defendants-Appellants.*

Nos. 10-5813/5814

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 06-00272—Joseph M. Hood, District Judge.

Argued: January 20, 2012

Decided and Filed: April 13, 2012

Before: SILER, CLAY, and ROGERS, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** James A. Shuffett, Lexington, Kentucky, William T. Ramsey, NEAL & HARWELL, PLC, Nashville, Tennessee, for Appellants. Richard A. Simpson, WILEY REIN LLP, Washington, D.C., for Appellee. **ON BRIEF:** James A. Shuffett, Lexington, Kentucky, William T. Ramsey, Kendra E. Samson, NEAL & HARWELL, PLC, Nashville, Tennessee, for Appellants. Richard A. Simpson, WILEY REIN LLP, Washington, D.C., for Appellee.

_____

## OPINION

_____

ROGERS, Circuit Judge. This case involves whether a malpractice liability policy is properly rescinded for incomplete responses to questions on the applicable insurance applications. After lawyer Melbourne Mills, Jr., was successfully sued for

1

millions of dollars for legal malpractice, his ostensible malpractice insurance carrier, Continental Casualty Company, sought a judicial declaration that it was entitled to rescind Mills's insurance policy for the time period covered by the class action. The district court granted Continental summary judgment, holding that Mills's failure to disclose an ongoing state bar association inquiry constituted a material misrepresentation when the policy renewal application specifically asked if "any attorney [was] subject to any disciplinary inquiry . . . during the expiring policy period." On Mills's appeal, there are two alternative bases for affirming the judgment in favor of Continental: (1) Mills's negative response to a different question constituted a material misrepresentation in light of the ongoing bar association inquiry which ultimately led to Mills's disbarment, and (2) the policy's dishonesty exclusion clause bars coverage of any claim arising out of a "dishonest, fraudulent, or . . . malicious act or omission." In 2010, the Kentucky Supreme Court issued an order which permanently barred Mills from the practice of law in Kentucky. This order constituted a sufficient "regulatory ruling" under the dishonesty exclusion clause to bar coverage. Each of these two bases supports upholding the district court's grant of summary judgment.

Continental sued below to rescind a malpractice insurance policy for the Law Offices of Melbourne Mills, Jr., after Mills and other attorneys allegedly breached their fiduciary duties during the negotiations of a large class action settlement. Mills and others, including Shirley Cunningham and William Gallion, represented a group of over 400 plaintiffs in a class action suit against American Home Products for injuries related to the use of the diet drug Fen-Phen. At the outset of the suit, it was agreed that the lawyers' fees would be determined by contingency fee contracts, limited to 30% of the clients' gross recovery. In May 2001, American Home Products agreed to settle the class action for almost $200 million. The plaintiffs in the action together received only $74 million, or 37% of the settlement, while the lawyers received the following: Mills received $23 million; Cunningham received $26 million; Gallion received $30 million; Stan Chesley received $20 million; and consultants and other counsel received $7 million. The remaining $20 million was used to establish The Kentucky Fund for

Healthy Living, Inc.  Mills served as a member of the Fund's Board of Directors, for which he allegedly received a monthly compensation of $5,350.

In early February 2002, Mills learned that the Kentucky Bar Association ("KBA") was investigating complaints filed against him in connection with the Fen-Phen class action.  The Inquiry Commission Complaint stated that Mills was under "investigation" for "fees obtained in settlement of certain [claims regarding the use of Fen-Phen and other pharmaceuticals] . . . [that] were divided with other counsel not in your firm," as well as allegations concerning a paralegal in Mills's office who was "conducting the unauthorized practice of law" as part of the work on the class action. On February 11, 2002, Mills's attorney, William Johnson, attended a hearing of the KBA's Inquiry Commission with respect to an application for a subpoena duces tecum that was served on Mills.

In August 2003, Mills applied to renew his professional liability insurance with Continental for the 2003– 2004 year.  Continental had insured Mills's law office for many years prior to this application.

Question 3 of the application asked: "Are there any claims, or acts or omissions that may reasonably be expected to be a claim against the firm, that have not been reported to the Company or that were reported during the expiring policy period?"  In response, Mills checked "NO," but made a notation to "See Schedule 2."  Schedule 2, entitled *E&O Claims*, stated:  "In addition to Melbourne Mills, Jr., the lawyers currently serving in the firm include two of counsel partners, David L. Helmers and E. Patrick Moores.  The information regarding the of counsel attorneys is contained on the attached attorney information sheet."

Question 4 of the 2003 application read: "Has any attorney been disbarred, suspended, formally reprimanded or subject to any disciplinary inquiry, complaint or proceeding for any reason other than non-payment of dues during the expiring policy period?"  Again, Mills checked "NO," but wrote that Continental should "See Schedule 3."  Schedule 3, entitled *Disciplinary Proceedings*, stated:

> During the current year no attorney has been disbarred, suspended, formally reprimanded or subject to any disciplinary inquiry, complaint or proceeding.  In prior years, attorneys in the Firm have responded to inquiries filed by all jurisdictions exercising jurisdiction and control over attorney conduct.  There have been no adverse findings regarding any attorney or other party's conduct.

According to Mills, at the time of the 2003 application, he did not know the status of the 2002 KBA investigation; in his own words, the case "lay in limbo for years at a time.  Just nothing was done."

In August 2003, Continental granted an insurance policy, entitled Lawyers' Professional Liability Policy, to the Law Offices of Melbourne Mills, Jr.  The policy contained various exclusions, including a Dishonesty Exclusion which stated:

> This Policy does not apply . . . to any claim based on or arising out of any dishonest, fraudulent, or criminal or malicious act or omission by an Insured except that this exclusion shall not apply to personal injury.  The Company shall provide the Insured with a defense of such claim unless or until the dishonest, fraudulent, criminal or malicious act or omission has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not.  Such defense will not waive any of the Company's rights under this Policy.

In 2005, the Fen-Phen class action members asserted legal malpractice claims against Mills and others in *Abbott, et al. v. Chesley, et al*.  The Boone County Circuit Court determined that the attorneys "breached their fiduciary duties to the Plaintiffs when they paid themselves fees over and above the amount to which they were entitled to under their fee contracts with their clients."  As a result, the class plaintiffs were awarded $42 million.  Continental initially provided Mills a defense in this case; however, Continental also fully reserved its rights, including the right to rescind the policy.

Continental sought a judicial declaration that it was entitled to rescind the insurance policy granted to the Law Offices of Melbourne Mills, Jr., for the period covering August 21, 2003 to August 21, 2004.  The district court granted summary

judgment in favor of Continental, holding that Continental was entitled to void the policy because Mills's 2003 application included material misrepresentations and omissions regarding the ongoing KBA ethical inquiries.   Because the district court found that "Mills knew that a bar complaint had been filed against him in early 2002," and the "KBA's investigation was ongoing," the district court held that Mills's response to Question 4 constituted a material misrepresentation under section (2) of K.R.S. § 304.14-110.  This section provides that a misrepresentation prevents recovery under a policy if it is "[m]aterial either to the acceptance of the risk, or to the hazard assumed by the insurer."  The district court noted that the "ongoing KBA inquiry into Mills's actions with respect to the Fen-Phen Action is precisely the type of information Continental needed to evaluate its potential for current and future risk."  The district court also determined that Mills's response to Question 4 satisfied section (3) of K.R.S. § 304.14-110, which provides that a misrepresentation shall bar coverage if "[t]he insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate . . . if the true facts had been made known to the insurer as required . . . by the application for the policy."  In doing so, the district court relied heavily on the testimony of a Continental employee who stated that disclosure of the investigation would have led Continental to take "one of several potential restrictive underwriting actions in order to address potential exposure."  Holding that Mills's response to Question 4 entitled Continental to rescind the policy, the district court determined that it was not necessary to address whether Mills's answer to Question 3 was a material misrepresentation or whether Continental was entitled to summary judgment based upon exclusionary language in the policy.

In addition to the grant of summary judgment to Continental, a money judgment for $233,674.49 was entered against Mills, which was the amount of the defense costs Continental paid on his behalf in the initial class action.

On June 10, 2010, the same day that the money judgment was entered, the district court also granted Continental leave to file supplemental authority, namely:  (1) the May 20, 2010 Order of the Kentucky Supreme Court which disbarred Mills from the practice

of law in Kentucky, and (2) the August 27, 2009 Findings of Fact and Conclusions of Law of the Trial Commissioner, which the Kentucky Supreme Court used to reach its decision to disbar Mills. The district court held that it could take judicial notice of the Order of the Supreme Court disbarring Mills and the Findings of Facts because the documents came under Fed. R. Evid. 803(8), the public records exception to inadmissible hearsay. In the alternative, the district court determined that the documents had the "guarantees of trustworthiness" which allowed them to be admitted pursuant to Fed. R. Evid. 807. In allowing these documents to be included in the record, the district court noted that it did not reach the issue of whether the dishonesty bar in the policy voided Mills's insurance, and "[s]hould an appellate court have reason to review the additional grounds upon which Continental moved for summary judgment, these documents could be essential to a complete record."

Mills and the class members, who intervened to protect their ability to recover against Mills, now appeal. They argue that Mills did not make a material misrepresentation on the 2003 insurance renewal application, and thus the policy should not have been rescinded. Mills and the class action plaintiffs also maintain that the district court erred by allowing Continental to file supplemental authority that was both a finding of fact and hearsay after the court had already granted summary judgment.

Because Mills made a material misrepresentation in his malpractice insurance application with Continental, the policy was properly voided under Kentucky law. Though the district court determined that the policy was void due to Mills's response to Question 4 of the 2003 application, Mills's answer to Question 3 represented a material misrepresentation, and provides an alternative basis for affirmance. According to K.R.S. § 304.14-110, a misrepresentation voids an insurance policy if the misrepresentation is "material" to the acceptance of risk or if the insurance company would not have issued the policy if the true facts had been made known. Though this standard is disjunctive, Mills's response to Question 3 was both a misrepresentation that was material to Continental's acceptance of risk and, if Continental had known of the investigation

against Mills, Continental would not have issued the policy or would not have issued the policy at that rate.

Mills's answer to Question 3 of the 2003 application was a material misrepresentation. Question 3 of the application asked: "Are there any claims, or acts or omissions that may reasonably be expected to be a claim against the firm, that have not been reported to the Company or that was reported during the expiring policy period?" In response, Mills checked "NO," but made a handwritten notation to "See Schedule 2." Schedule 2, entitled *E&O Claims*, stated: "In addition to Melbourne Mills, Jr., the lawyers currently serving in the firm include two of counsel partners, David L. Helmers and E. Patrick Moores. The information regarding the of counsel attorneys is contained on the attached attorney information sheet."

Mills's answer to Question 3 was a misrepresentation because in August of 2003, when he was filling out the application, Mills knew of not only the ongoing KBA investigation, initiated in February 2002 but unresolved at that time, but also all of the acts surrounding the Fen-Phen class action settlement negotiations, which reasonably could have—and ultimately did—lead to a malpractice claim. Even though the class action members did not bring the legal malpractice suit until 2005, in August 2003 Mills still knew that, collectively, the lawyers in the Fen-Phen class action paid themselves over $126 million. According to one uncontested document put forth by the class members, the lawyers were limited to fees of a little over $60 million. Mills knew that the clients had not been told all of the pertinent facts regarding the settlement offer and the fee splitting arrangement, and that the KBA had subpoenaed the financial records from the case as a result of the 2002 inquiry. In sum, Mills was aware that he had engaged in conduct that led to the disbarment of him and two of his co-counsel. Mills knew that his conduct was egregious and that his "acts" and "omissions" could have "reasonably be[en] expected" to lead to "a claim against the firm." Mills was unquestionably required to disclose this information to Continental when filling out the policy renewal application.

Mills's failure to disclose his actions in response to Question 3 was also material to Continental's acceptance of risk, K.R.S. § 304.14-110(2), and had an impact on Continental's decision to issue the policy at the rate that it did, K.R.S. § 304.14-110(3). Mills incorrectly argues that K.R.S. § 304.14-110 requires that the insured make an *intentional* misrepresentation; the plain language of the statute requires only that the misrepresentation be "material." According to Kentucky case law, a misrepresentation is material if "the insurer, acting reasonably and naturally in accordance with the usual practice of . . . insurance companies under similar circumstances, would not have accepted the application if the substantial truth had been stated therein." *Mills v. Reserve Life Ins. Co.*, 335 S.W.2d 955, 958 (Ky. 1960). A misrepresentation is material if there is sufficient evidence that the insurance company would not have issued the policy or would have issued a different policy if it had knowledge of Mills's actions and omissions under K.R.S. § 304.14-110(3). Therefore, many of the reasons that support a determination of "materiality" under K.R.S. § 304.14-110(2) also support a holding that Mills's misrepresentation satisfied section (3) of the statute as well.

Mills's failure to disclose the circumstances surrounding the Fen-Phen class action and the ongoing KBA investigation was material to Continental, which likely would not have issued the policy, or would have issued a different policy, had it known of Mills's acts and omissions during this time. Because Continental has a duty to defend all claims against its insured, including non-meritorious claims, Continental has an interest in all potential claims. This is "precisely the kind of information that Continental [sought and] would need to evaluate its potential for current and future risk." *Cont'l Cas. Co. v. Lampe & Hamblin*, *PLLC*, No. 3:03CV604-H, 2004 WL 5708261, at *4 (W.D. Ky. Nov. 1, 2004) ("*Lampe*"). In this case, that risk was amplified by the enormity of the $200 million class action settlement. Mills had a duty to disclose this information in response to Question 3, and when he did not, he affected Continental's opportunity to consider and weigh its options when issuing the Policy.

Peter Brinkman, underwriter for Continental, also testified that he could "state without hesitation or qualification that an affirmative response to Question 3 . . . of the

2003 application would have been material to Continental's underwriting of policies issued to the Firm." Though the class members argue that the testimony of the insurance company's own employee is not sufficient for a finding of materiality, this is not correct. In *Lampe* the district court applied Kentucky law and determined that a misrepresentation was material solely on the basis of commonsense assumptions regarding what would have an impact on the decision making process of a reasonable insurance company. Underlying documents or employee testimony were not necessary to support this determination. *Id.* at *2.

Both Mills and the class action members dispute the district court's finding and argue that an answer to Question 3 reflects the "subjective state of the applicant's mind," and thus the question of materiality should be determined by a jury. However, in reviewing a policy under K.R.S. § 304.14-110, this court has not hesitated to declare that a misrepresentation was "plainly material." *See Cook v. Life Inv. Ins. Co.*, 126 F. App'x 722, 729 (6th Cir. 2005). In addition, while Question 3 is subjective, the ongoing investigation by the KBA, as well as the circumstances surrounding the class action settlement, meant that Mills knew that there was the potential for a "claim" against him, and thus the only possible answer to Question 3 was "YES." The purpose of  K.R.S § 304.14-110 is to "encourage honesty . . . on the part of potential insureds and to dissuade misrepresentations," *Progressive*, 891 F. Supp. at 381; therefore, even if Mills did not "know" that the Fen-Phen class action members would initiate a lawsuit against him, he should have let Continental know of the *possibility* of a claim in light of the complaints and inquiry. Mills's reference to Schedule 2, which does not answer Question 3 at all, further suggests that Mills understood and was trying to get around Continental's clear attempt to learn of any current and potential future risk.

Mills resurrects an argument raised in *Lampe*, comparing malpractice coverage to Kentucky's universal automobile liability insurance coverage and arguing that the "expressed public interest" in legal malpractice insurance "outweighs any right of an insurer to rescind an insurance contract." *Lampe*, 2004 WL 5708261, at *3. The district court in *Lampe* considered this argument carefully but rejected it, concluding "that a

Kentucky court would not find public policy of the state so strongly in favor of lawyers liability insurance coverage that it could outweigh an insurer's right to rescission as is the case with automobile liability coverage." *Id.* at *3 -*4.  In any event, Mills did not make this argument during the proceedings before the district court and this court will not review issues raised for the first time on appeal, because "[o]ur function is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order." *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006).   Accordingly, we need not consider this new argument on appeal.  *See Post v. Bradshaw*, 621 F.3d 406, 415 (6th Cir. 2010).

As a final argument, the Fen-Phen class action plaintiffs suggest, as best we can understand, that if Continental had known of Mills's ongoing investigation, and as a result had cancelled or not renewed the *2001– 2002* policy, Mills could have purchased a three-year extended reporting period ("ERP"), thus covering Mills during the time frame encompassing the claims of the class action plaintiffs.  However, this argument makes little sense, as the opportunity for Mills to purchase the ERP would have expired 60 days after the hypothetical non-renewal or cancellation in 2002, and thus would have occurred almost ten months prior to the 2003 misrepresentation that is at the crux of this case.

Though not argued on appeal, the class action plaintiffs made a similar argument below with regard to a potential ERP after the cancellation or non-renewal of the *2002–2003* policy.  However, in addition to not being adequately raised, this claim suffers from the following weakness: such an ERP would have had to been purchased at 175% of the premium rate.  Thus, even under this speculation, Continental was deprived of the ability to charge a higher premium due to Mills's misrepresentation.  Therefore, the hypothetical existence of the ERP does not change the materiality analysis.

In sum, Mills's response to Question 3 failed to disclose the circumstances surrounding the Fen-Phen class action and the ongoing KBA investigation, and this

information was material to Continental's risk assessment. These conclusions are sufficient to uphold the district court's grant of summary judgment.

In addition, the policy could have been rescinded under the plain terms of a clause in the policy excluding coverage for dishonest acts. The clause provides:

> This Policy does not apply . . . to any claim based on or arising out of any dishonest, fraudulent, or criminal or malicious act or omission by an Insured except that this exclusion shall not apply to personal injury. The Company shall provide the Insured with a defense of such claim unless or until the dishonest, fraudulent, criminal or malicious act or omission has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not. Such defense will not waive any of the Company's rights under this Policy.

Although Kentucky law states that an insurance policy "should be liberally construed" and "all doubts [should be resolved] in favor of the insureds," this does not mean that the clear terms should not be interpreted "according to their 'plain and ordinary meaning.'" *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753 (Ky. App. 2005) (citing *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131-32 (Ky. 1999)). *See also Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 564 (6th Cir. 2008). Policies should reflect "the parties' mutual understanding at the time they entered into the contract and '[s]uch mutual intention is to be deduced, if possible, from the language of the contract alone.'" *K.M.R.*, 171 S.W.3d at 753 (quoting *Nolan*, 10 S.W.3d at 131.32).

In this case, the dishonesty exclusion clause can only be interpreted to mean that the parties did not intend for the policy's legal malpractice coverage to include acts that were objectively fraudulent or dishonest. To the extent that the clause requires a court or regulatory ruling, the requirement is satisfied by the May 20, 2010 Order of the Kentucky Supreme Court which disbarred Mills from the practice of law in Kentucky. *Ky. Bar Ass'n v. Mills*, 318 S.W.3d 89, 93 (Ky. 2010). After granting Continental's motion for summary judgment, the district court properly granted Continental leave to file the disbarment order as supplemental authority. The Kentucky Supreme Court ruling is within the plain language of Fed. R. Evid. 803(8), the public records exception,

and thus is not inadmissible hearsay. Moreover, the class action members concede that the Disbarment Order may be considered as part of the record, and that this court may take judicial notice of it as part of our de novo review on summary judgment.

The Kentucky Supreme Court's ruling determined that Mills had committed "dishonest" and "fraudulent . . . act[s] or omission[s]," and thus is sufficient to bar coverage under the dishonesty exclusion clause of the policy. In addition to other violations, the Kentucky Supreme Court found that Mills violated S.C.R. 3.130– 8.3(c)

> by *deceiving* his clients into accepting the individual settlement amounts devised by a fraudulent method; *misrepresenting* to the Boone Circuit Court that his clients had agreed to donate a substantial portion of the total settlement received to charity; failing to inform the Boone Circuit Court that he had contingent fee contracts with all of his clients which set a specific fee; *providing, or assisting in providing, false or misleading information* to the Boone Circuit Court about the fees and expenses . . . ; and *misappropriating, or participating in the misappropriation of*, his clients' funds and the subsequent cover up.

*Id.* (emphasis added).

As the court found that Mills's "participat[ed] in the misappropriation of . . . clients' funds," Mills's argument that he did not *personally* misappropriate funds, and thus did not act fraudulently, is not persuasive. Even if he did not himself engage in the misconduct, the Kentucky Supreme Court found that Mills's acted dishonestly "by failing to exercise professional judgment independent of his co-counsel." *Id.* This omission is covered by the dishonesty exclusion clause. Similarly, Mills's assertion that he did not act fraudulently because, unlike his colleagues, he was acquitted of criminal charges, also fails because the dishonesty exclusion clause does not require a criminal conviction to bar coverage. Therefore, the May 20, 2010 Order of the Kentucky Supreme Court disbarring Mills from the practice of law is a sufficient basis for precluding coverage under the policy's dishonesty exclusion clause.

Because it is not necessary to rely on the August 27, 2009 Findings of Fact and Conclusions of Law of the Trial Commissioner to affirm the district court's grant of

summary judgment, we do not address whether this document was inadmissible hearsay and whether the district court erred by allowing Continental to file it as supplemental authority. We also do not address whether Mills's response to Question 4 warranted rescission of the policy.

The judgment of the district court granting summary judgment to Continental is affirmed.