NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0494n.06

No. 19-5950

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE CO., | ) | **FILED** |
| | ) | Aug 21, 2020 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| ESTATE OF CHAD JUDE, et al., | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendants-Appellants. | ) | |
| | ) | |
| | ) | |

BEFORE:     CLAY, ROGERS, and GRIFFIN Circuit Judges

ROGERS, Circuit Judge.  The parties do not dispute that Chad Jude was not completely forthright regarding his health condition when he obtained a larger life insurance policy to replace his existing policy from American General Insurance Company (American General).  Mr. Jude's health changed between the time that he applied for the new life insurance policy in August 2015 and when he paid the first premium for this policy in October 2015.  Mr. Jude's changed health condition would have altered his responses to questions in the life insurance policy application. But Mr. Jude did not disclose these changes in his health condition and represented to American General that his health had not changed during this period.  The parties disagree on the consequences of Mr. Jude's lack of transparency.  Although the Judes do not appeal the district court's determination that Mr. Jude's failure to disclose his changed health condition voids the replacement life insurance policy, American General violated Kentucky's replacement life

insurance regulation by purporting to rescind the entire replacement policy and not providing the required contestability credit for the replaced policy until months after bringing this lawsuit.

I.

In July 2014, American General issued Mr. Jude a $500,000 life insurance policy (the 2014 policy). A year later, in July 2015, American General reached out to Mr. Jude regarding the possibility that he would want to renew the life insurance policy. Mr. Jude elected to increase his coverage to $1.5 million. American General sent Mr. Jude an application as part of the process of acquiring a replacement life insurance policy to increase his coverage.

Part B of the application included questions about Mr. Jude's health condition and history. Four questions on the application are relevant to this case. First, question 5(A)(8) asked whether Mr. Jude had "ever been diagnosed as having, been treated for, or consulted a licensed health care provider for . . . a disorder of the brain or spinal cord or other nervous system abnormality." Mr. Jude answered "no." Second, question 5(B) asked whether Mr. Jude was "currently taking any medication, treatment or therapy" or was "under medical observation." Mr. Jude disclosed that he took medication for seasonal allergies and acid reflux, but did not disclose that he was taking any other medication, undergoing any treatment or therapy, or under medical observation. Third, question 5(F)(1) asked whether Mr. Jude had "been hospitalized, consulted a health care provider or had any illness, injury or surgery" other than previously stated in the past ten years. Mr. Jude responded "no." Fourth, question 5(H) asked whether Mr. Jude had "any symptoms or knowledge of any other condition" that he had not otherwise disclosed. Mr. Jude again answered "no."

In signing the application, Mr. Jude made several important acknowledgements. He acknowledged that "any misrepresentation contained in this application and relied on by [American General] may be used to reduce or deny a claim or void the policy if: (1) such

misrepresentation materially affects the acceptance of the risk; and (2) the policy is within its contestable period." Further, he understood and agreed that:

> even if [Mr. Jude] paid a premium no insurance will be in effect under this application, or under any new policy or any rider(s) issued by [American General], unless or until all three of the following conditions are met: (1) the policy has been delivered and accepted; and (2) the full first modal premium for the issued policy has been paid; and (3) there has been no change in health of the Proposed Insured(s) that would change the answers to any question in the application before items (1) and (2) in this paragraph have occurred.

Mr. Jude signed the application on August 4, 4015. That same day, Mr. Jude also signed a "Notice Regarding Replacement," acknowledging that the new life insurance policy was intended to replace the 2014 policy.

On August 15, 2015, Mr. Jude had a magnetic resonance imaging (MRI) scan and was diagnosed with Chiari I malformation, which is a condition where the brain extends into the spinal cord. Mr. Jude subsequently consulted with a physician on August 20, who referred Mr. Jude to neurosurgery because of his neurologic symptoms.

On August 31, 2015, American General sent Mr. Jude a letter advising him that replacing his life insurance coverage would result in the termination of the 2014 policy. American General informed Mr. Jude that "[i]t's important that you carefully consider whether this action is in your best interest. We recommend that you carefully compare the costs and benefits of the policy you currently have with the policy being proposed to you."

On September 2, 2015, Lori Jude, Mr. Jude's wife, contacted the Cleveland Clinic to cancel Mr. Jude's appointment scheduled for that day because he had been in the emergency room the previous night as a result of choking on food due to his diminished motor functions. Ms. Jude conveyed that Mr. Jude's condition was "deteriorating rapidly with difficult speech, swallowing

and decreased upper extremity strength." The following day, September 3, 2015, Mr. Jude saw a neurosurgeon at the Cleveland Clinic.

On September 4, 2015, American General issued Mr. Jude the new $1.5 million replacement policy (the 2015 policy). The policy declared that "[e]xcept for nonpayment of premiums, [American General] will not contest this policy after it has been in force during the lifetime of the Insured for two years from the Date of Issue. If [American General] contest[s] this policy, [American General] will contest it based only on statements made in the application." Further, American General agreed that the 2015 policy's "Contestability provision will allow credit from the period of time elapsed under the Replaced [2014] Policy's Contestability provision. The credit will apply to the Face Amount of the Replaced [2014] Policy."

Ten days later, on September 14, 2015, Mr. Jude had a second MRI, which confirmed his Chiari I malformation diagnosis. Then, on September 21, Mr. Jude signed a "Policy Acceptance and Amendment of Application" (PAA) form that was part of the 2015 policy. Although Mr. Jude had consulted with multiple physicians, undergone two MRIs, and been diagnosed with Chiari I malformation between the time that he signed the life insurance application on August 4, 2015 and the time that he signed the PAA, Mr. Jude represented that:

1. There have been no changes since the date of the application in my health or in any other condition; and
2. Neither I nor any other proposed insured has since the date of the application:
   a. Consulted a licensed health care provider or received medical or surgical advice or treatment; or
   b. Acquired any knowledge or belief that any statements made in the application are now inaccurate or incomplete.

On September 30, Mr. Jude's neurosurgeon recommended that Mr. Jude undergo decompression surgery to treat the Chiari I malformation. Mr. Jude underwent a pre-operative physical for the surgery on October 1. The next day, on October 2, American General received

Mr. Jude's first full premium payment on the 2015 policy. Mr. Jude then had the surgery on October 4. In February 2016, Mr. Jude was diagnosed with Amyotrophic Lateral Sclerosis (ALS).

Later, an American General underwriter, Laura Stout, conducted a routine investigation of Mr. Jude's medical records. The investigation revealed that Mr. Jude's answers in his application were incorrect and incomplete. On March 30, 2017, American General therefore sent Mr. Jude a letter seeking to rescind Mr. Jude's 2015 policy and render coverage null and void because "the Company's underwriting department would not have issued this policy had it been aware" of Mr. Jude's medical history and diagnosis. The letter did not say anything about whether the 2014 policy would be reinstated if the 2015 policy was rescinded. American General included a check for the premiums that Mr. Jude had paid, but Mr. Jude refused to cash the refund check or sign the voluntary rescission agreement. On August 18, 2017, American General's lawyers sent Mr. Jude another letter claiming that he had provided incorrect information in his insurance application and seeking to rescind the 2015 policy. This letter also did not mention whether the 2014 policy would be reinstated if the 2015 policy was rescinded. But Mr. Jude again refused to sign the voluntary rescission agreement.

That same day, August 18, 2017, American General filed a petition for declaratory judgment that the 2015 policy was void. American General alleged that Mr. Jude had made material misrepresentations in the insurance application. American General's complaint did not mention the 2014 policy and therefore did not state whether the 2014 policy would be reinstated if the 2015 policy was declared void. Mr. Jude and his wife filed counterclaims against American General, alleging that American General breached the 2015 policy, acted in bad faith, and violated Kentucky law. The Judes alleged that American General's attempt to void the 2015 policy would

also result in the denial of any coverage under the replaced 2014 policy. The Judes also sought punitive damages.

Mr. Jude died on December 30, 2017, and the district court substituted the Estate of Chad Jude as a defendant and counter-plaintiff.[1] Although Ms. Jude did not make a claim for death benefits to American General, American General in August 2018 reinstated the 2014 policy and paid Ms. Jude $533,424.21, which included the $500,000 in death benefits from the 2014 policy plus interest but minus the back premiums needed to reinstate the 2014 policy.[2]

Both sides moved for summary judgment in November 2018. The district court held oral argument and granted American General's motion for summary judgment and denied the Judes' motion.

The district court determined that the insurance agreement's assertion that "no insurance will be in effect under this application . . . unless or until" three conditions were met constituted conditions precedent to the formation of the insurance policy. Thus, the court concluded that the third condition—that there had not been a change in Mr. Jude's health that would change the answers to any question in the application before the policy was delivered and accepted and before the full first premium had been paid—was a condition precedent. Mr. Jude signed the insurance application on August 4, 2015, the policy issued on September 4, 2015, and Mr. Jude paid the first premium on October 2, 2015. However, there were undisputedly changes in Mr. Jude's health that would have changed his answers on the insurance application between the date that he signed the application and the date that he made his first premium payment on the 2015 policy. Mr. Jude did

---

[1] We refer to defendants-appellants, which consist of Lori Jude and the Estate of Chad Jude, as the Judes.

[2] American General's August 2018 letter to Ms. Jude informing her that American General was reinstating the 2014 policy implied that had American General succeeded in having the court declare the 2015 policy void while Mr. Jude was still alive, American General would have engaged in discussions with Mr. Jude "on alternative options, such as the potential reinstatement of the replaced $500,000 policy."

not report these changes. Accordingly, the court found that there was no genuine issue of material fact that the third condition precedent to the policy's formation was not met and so no insurance policy was formed. The court therefore granted summary judgment to American General and held that the 2015 policy was null and void *ab initio*.

In the alternative, the district court concluded that summary judgment in favor of American General would be appropriate even if the third condition was not a condition precedent because Mr. Jude included material misrepresentations in his application. The court reasoned that Mr. Jude misrepresented his health in his application by failing to disclose changes in his health and that Mr. Jude's misrepresentations were material because they impacted the risk of insuring him. The court determined that there was no genuine issue of material fact that American General would not have issued the 2015 policy had the application been completed truthfully. Thus, the 2015 policy was void *ab initio*.

The district court also rejected the Judes' counterclaims, granting summary judgment to American General on each of these claims. The court rejected the Judes' claim that American General violated Kentucky's replacement life insurance statute by rescinding the 2015 policy. Kentucky law states that:

> (2) No replacing insurer shall issue any life insurance policy or annuity contract in a replacement transaction to replace an existing life insurance policy or annuity contract unless the replacing insurer shall agree in writing with the insured that:
>> (a) The new life insurance policy or annuity contract issued by the replacing insurer will not be contestable by it in the event of such insured's death to any greater extent than the existing life insurance policy or annuity contract would have been contestable by the existing insurer had such replacement not taken place provided, however, that this paragraph shall not apply to that amount of insurance written and issued which exceeds the amount of the existing life insurance.

Ky. Rev. Stat. Ann. § 304.12-030(2). Because the court had already determined that there was never a valid 2015 replacement policy, the court ruled that Kentucky's replacement life insurance

statute was not applicable. In other words, the court determined that there was no "new life insurance policy" to be contested so the statute did not apply. Further, the court concluded that even if American General had violated the replacement life insurance statute, the issue was moot because Ms. Jude received the benefits from the 2014 policy when American General sent her a check for $533,424.41.

Also, the district court dismissed the Judes' breach of contract claim based on the court's earlier determination that there was never a valid contract. Accordingly, the court granted summary judgment to American General on this claim.

Further, the court rejected the Judes' argument that American General violated Kentucky's unfair competition and unfair and deceptive practices statute by allegedly violating Kentucky insurance regulations. The Judes claimed that American General did not adhere to the regulation that "[i]f a replacement [life insurance policy] is involved in the transaction, the replacing insurer shall . . . [a]llow credit for the period of time that has elapsed under the replaced policy's or contract's incontestability and suicide period up to the face amount of the existing policy or contract." 806 Ky. Admin. Regs. 12:080 § 5(1)(e). The court again rejected this claim based on its determination that there was not a valid replacement policy so the insurance regulation could not have been violated. The court therefore granted summary judgment in favor of American General on this claim.

In addition, the court rejected the Judes' statutory and common law claims premised on bad faith. First, the Judes claimed that American General violated Kentucky's unfair claims settlement practices statute, Ky. Rev. Stat. Ann. § 304.12-230, by allegedly engaging in activities explicitly proscribed in the statute and acting in bad faith. Second, the Judes claimed that American General was engaged in "[u]nfair, false, misleading, or deceptive acts or practices" in

violation of Kentucky's Consumer Protection Act. Ky. Rev. Stat. Ann. § 367.170(1). Third, the Judes alleged that American General breached its duty to act in good faith. The district court assessed that these statutory and common law bad faith claims all required the Judes to show: "(1) that the insurer was obligated to pay the claim under the terms of the policy, (2) that the insurer lacked a reasonable basis in law or fact for denying the claim, and (3) that the insurer knew there was no reasonable basis for denying the claim." Because the Judes could not demonstrate that American General had an obligation to pay on the policy, as there was no valid 2015 insurance contract, the court granted summary judgment in favor of American General on these bad-faith claims.

Finally, the district court granted summary judgment for American General on the Judes' claim for punitive damages because a claim for punitive damages is not a separate cause of action—punitive damages is a remedy for another cause of action. Because the court found that the Judes did not otherwise state a valid cause of action, it concluded that summary judgment on the punitive damages claim was similarly appropriate.

The Judes now appeal the district court's grant of summary judgment in favor of American General and dismissal of their claims that American General violated Kentucky's replacement life insurance statute and regulation, unfair competition and unfair and deceptive practices statute, and Consumer Protection Act. The Judes do not appeal the district court's determination that the 2015 policy was void *ab initio* because Mr. Jude materially misrepresented his health condition and do not appeal the dismissal of their breach of contract, common law duty to act in good faith, or unfair claims settlement practices act claims.

II.

A.

Accepting for purposes of this appeal that the 2015 policy was void *ab initio*, however, does not alleviate American General's responsibilities to comply with Kentucky's insurance laws and regulations. Notwithstanding American General's initial rescission of the entire 2015 replacement policy, failing to provide the Judes the required contestability credit for the replaced 2014 policy for a significant period of time would violate Kentucky's replacement life insurance regulation, 806 Ky. Admin. Regs. 12:080, and therefore may violate Kentucky's statute prohibiting unfair competition and unfair and deceptive practices, Ky. Rev. Stat. Ann. § 304.12-010.

First, the Judes do not contest the district court's conclusion that Mr. Jude made material misrepresentations in the application and do not appeal the district court's ruling that Mr. Jude's material misrepresentations of his health condition voided the 2015 policy *ab initio*. Kentucky Revised Statute § 304.14-110 states that:

> Misrepresentations, omissions, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>   (1) Fraudulent; or
>   (2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>   (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Ky. Rev. Stat. Ann. § 304.14-110. Kentucky courts have recognized that this statute "reflects a public policy requiring 'those who apply for insurance [to] be honest and forthright in their representations.'" *Progressive N. Ins. Co. v. Corder*, 15 S.W.3d 381, 383 (Ky. 2000) (alteration in original) (quoting *State Farm Mut. Auto. Ins. Co. v. Crouch*, 706 S.W.2d 203, 207 (Ky. Ct. App.

1986)). In *Crouch*, the Kentucky Court of Appeals concluded that a fraudulent or material misrepresentation voids a policy *ab initio*. 706 S.W.2d at 207; *see also Cont'l Cas. Co. v. Law Offices of Melbourne Mills, Jr., PLLC*, 676 F.3d 534, 538 (6th Cir. 2012).

Mr. Jude misrepresented his health condition by failing to disclose that his health condition and history had changed from the time that he signed the application on August 4, 2015. On the August 4, 2015 application, Mr. Jude stated that he had not "ever been diagnosed as having, been treated for, or consulted a licensed health care provider for . . . a brain or spinal cord or other nervous system abnormality," or "been hospitalized, consulted a health care provider or had any illness, injury or surgery" other than previously stated in the past ten years. Subsequently, Mr. Jude represented that there had not been changes in his health condition since the application, that he had not consulted a licensed health care provider or received medical or surgical advice or treatment since the application, and that he had not acquired any information indicating that his statements in the application were inaccurate or incomplete when he signed the PAA on September 21, 2015. Yet, between August 4 and September 21, Mr. Jude had consulted with multiple physicians, undergone two MRIs, and been diagnosed with Chiari I malformation. Thus, Mr. Jude misrepresented his health condition when he signed the PAA on September 21, 2015.

The district court also concluded that Mr. Jude's misrepresentations were material. A misrepresentation "is material if the insurer, acting reasonably and naturally in accordance with the usual practice of life insurance companies under similar circumstances, would not have accepted the application if the substantial truth had been stated therein." *Mills v. Reserve Life Ins. Co.*, 335 S.W.2d 955, 958 (Ky. 1960). A misrepresentation is also material if "there is sufficient evidence that the insurance company would not have issued the policy or would have issued a different policy if it had knowledge of [the insured's] actions and omissions under K.R.S.

-11-

§ 304.14-110(3)." *Cont'l Cas. Co.*, 676 F.3d at 539. Thus, "many of the reasons that support a determination of 'materiality' under K.R.S. § 304.14-110(2) also support a holding that [a] misrepresentation satisfie[s] section (3) of the statute as well." *Id.* The district court concluded that Mr. Jude's neurological malformation was material to American General's acceptance of risk in issuing him a life insurance policy and that American General would not have issued the policy in the same manner as it did had Mr. Jude not misrepresented his health condition and history. The Judes do not dispute these conclusions and do not appeal the district court's determination that the policy was therefore void *ab initio* under Ky. Rev. Stat. Ann. § 304.14-110(2) and (3). Assuming that Mr. Jude's material misrepresentations voided the 2015 policy *ab initio*, we need not also analyze whether the application contained an unsatisfied condition precedent, as an unsatisfied condition precedent would mean the policy never took effect—yielding the same result as a voided policy.

B.

But this does not end our inquiry. Even assuming that the 2015 policy was void *ab initio*, American General's contesting of the entire $1.5 million replacement 2015 policy and then later payment of the $500,000 2014 policy amount after a significant delay, rather than rescinding only the replacement 2015 policy up to the replaced 2014 policy value from the outset, violated Kentucky's replacement life insurance regulation. Although this may be in some circumstances only a formal distinction, it can be significant where, as in this case, there is a significant delay.

American General's initial rescission of the entire $1.5 million replacement 2015 policy violated Kentucky's replacement life insurance regulation, 806 Ky. Admin. Regs. 12:080 § 5(1)(e), and therefore may have violated Kentucky's Insurance Code provision prohibiting unfair competition and unfair and deceptive practices, Ky. Rev. Stat. Ann. § 304.12-010. Kentucky

requires that "[i]f a replacement is involved in the transaction, the replacing insurer shall . . . [a]llow credit for the period of time that has elapsed under the replaced policy's or contract's incontestability and suicide period up to the face amount of the existing policy or contract." 806 Ky. Admin. Regs. 12:080 § 5(1)(e). Replacement is defined as

> any transaction in which a new life insurance policy or annuity contract is to be purchased and it is known or should be known to the proposing producer, or to the proposing insurer if there is no producer, that by reason of the transaction, an existing life insurance policy or annuity contract has been or is to be . . . [l]apsed, forfeited, surrendered or partially surrendered, assigned to the replacing insurer, or otherwise terminated.

Ky. Rev. Stat. Ann. § 304.12-030(1)(a), incorporated by 806 Ky. Admin. Regs. 12:080 § 1(11). The phrase "replacement" therefore includes transactions in which a new life insurance policy "is to be purchased." Thus, this regulation covers the period in which the insurer and insured are negotiating the insurance contract. Even assuming that the 2015 policy was void *ab initio*, there was a replacement transaction between American General and Mr. Jude. Accordingly, 806 Ky. Admin. Regs. 12:080 § 5(1)(e) applies to this case, contrary to the district court's conclusion.

American General was only permitted to rescind $1 million of the Judes' 2015 policy based on Mr. Jude's material misrepresentations under this regulation. Although American General eventually paid the Judes the replaced 2014 policy amount, American General nonetheless violated this regulation because the Judes allegedly endured about 17 months of not knowing whether they would receive anything. The record does not show that the Judes knew during this period that American General would pay the $500,000. American General's letters and suit asserted only that American General sought to rescind and void the entire replacement 2015 policy. These letters and the complaint in this suit never mentioned the replaced 2014 policy. This led the Judes to worry that they would not receive anything from American General, as Mr. Jude had terminated the 2014 policy when he obtained the 2015 policy. So American General's efforts to rescind and

void the 2015 policy seemed to the Judes to leave them with no life insurance protection whatsoever. Mr. Jude testified in November 2017 before his death that the "mental anguish [he] and [his] family have gone through has been horrendous, outrageous, and unnecessary." Mr. Jude also asserted that American General's actions had placed immense stress on his wife. The Judes say they lived with this emotional distress from March 2017, when American General sent the first letter seeking to rescind and void the 2015 policy, through August 2018, when American General sent Ms. Jude a letter informing her that it had reinstated the 2014 policy and would pay her the benefits under the 2014 policy. The Judes' brief states that Mr. Jude died in December 2017 thinking that his family would not receive any money. American General's initial rescission of the entire 2015 policy and extensive delay in providing the replaced 2014 policy value therefore violated Kentucky's replacement life insurance regulation that provides protections for insured individuals.

The district court thus erred in granting summary judgment to American General on the ground that it did not violate the regulation. A remand is accordingly warranted to determine whether the Judes can recover damages for injury suffered from that violation. To do so, the Judes will have to show that a violation of the regulation amounted to a violation of the Insurance Code, and that Ky. Rev. Stat. Ann. § 446.070 provides a damages cause of action for such a violation.[3] If so, the Judes must then presumably show that the regulation so incorporated protects against the

---

[3] The regulation that American General violated also provides that "[a]ny failure to comply with this administrative regulation shall be considered a violation of KRS 304.12-010 [the unfair competition and unfair and deceptive practices prohibition in the Kentucky Insurance Code]." 806 Ky. Admin. Regs. 12:080 § 8(1). 806 Kentucky Administrative Regulations 12:080 §§ 5 and 8 are statutorily authorized if they are "necessary for or as an aid to the effectuation of any provision of [the Kentucky Insurance Code]," Ky. Rev. Stat. Ann. § 304.2-110(1), but "[n]o such rule or regulation shall extend, modify, or conflict with any law of this state or the reasonable implications thereof," *id.* Assuming that these regulations are valid under this standard, then the Judes may presumably recover under a facial reading of Ky. Rev. Stat. Ann. § 446.070, which provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

injuries they assert, *see Carmen v. Dunaway Timber Co.*, 949 S.W.2d 569, 570 (Ky. 1997); *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011), and then prove up the damages alleged to have been caused by the violation, *see McCarty v. Covol Fuels No. 2, LLC*, 476 S.W.3d 224, 227–28 (Ky. 2015) (citing and quoting *Hargis v. Blaize*, 168 S.W.3d 36, 46 (Ky. 2005)). We do not address the legal scope or applicability of these requirements, or the extent to which they have or have not been met in the record before us, but instead leave those questions to the district court to address in the first instance.

C.

The remainder of the Judes' counterclaims fail. American General did not violate Kentucky's replacement life insurance statute, Kentucky's prohibition on "twisting," or Kentucky's Consumer Protection Act.

American General did not violate Kentucky's replacement life insurance statute, Ky. Rev. Stat. Ann. § 304.12-030(2). Under Kentucky law:

> (2) No replacing insurer shall issue any life insurance policy or annuity contract in a replacement transaction to replace an existing life insurance policy or annuity contract unless the replacing insurer shall agree in writing with the insured that:
>> (a) The new life insurance policy or annuity contract issued by the replacing insurer will not be contestable by it in the event of such insured's death to any greater extent than the existing life insurance policy or annuity contract would have been contestable by the existing insurer had such replacement not taken place provided, however, that this paragraph shall not apply to that amount of insurance written and issued which exceeds the amount of the existing life insurance.

Ky. Rev. Stat. Ann. § 304.12-030(2). Although the parties dispute whether this statute applies, we can assume without deciding that it does because American General complied with its requirements. The statute required American General to "agree in writing" to provide credit for

Mr. Jude's 2014 policy because the contestability period on this policy had passed.[4] American General fulfilled this procedural requirement when it agreed that the 2015 policy's "Contestability provision will allow credit from the period of time elapsed under the Replaced [2014] Policy's Contestability provision. The credit will apply to the Face Amount of the Replaced [2014] Policy." Although American General complied with the requirement in this statute, it nonetheless violated 806 Ky. Admin. Regs. 12:080 and potentially violated Ky. Rev. Stat. Ann. § 304.12-010, as discussed above, when it initially rescinded the entire $1.5 million replacement 2015 policy and did not provide credit for the 2014 policy for about 17 months.[5]

The Judes' assertion that American General engaged in the prohibited act of "twisting" is also unpersuasive. Kentucky's replacement life insurance statute contains a provision that declares that:

> (4) No person shall make or issue, or cause to be made or issued, any written or oral statement of a material fact which is untrue or omit to state a material fact necessary in order to make the statements made, in the light of circumstances under which they were made, not misleading with respect to comparisons as to the terms, conditions, or benefits contained in any policy for the purpose of inducing or attempting or tending to induce the policyholder to lapse, forfeit, borrow against, surrender, retain, exchange, modify, convert, or otherwise affect or dispose of any insurance policy.

Ky. Rev. Stat. Ann. § 304.12-030(4). The Judes have not shown that American General made an untrue or misleading statement about the contestability credit that induced or tended to induce Mr.

---

[4] The Kentucky Department of Insurance has taken the position that Ky. Rev. Stat. Ann. § 304.12-030(2) "requires the company which is replacing life insurance for a consumer to advise the consumer in writing of what benefit amount is contestable and for how long that contestability lasts," which is consistent with our interpretation of this statute. Ky. Dep't of Ins., Advisory Opinion 2014-02 (Jan. 29, 2014), http://insurance.ky.gov/PPC/Documents/advop14_02interpregreplins013014.pdf.

[5] We take no position on whether the provision in the 2015 policy allowing credit from the period elapsed under the replaced policy's contestability provision survives even though the 2015 policy is otherwise void *ab initio*, either by its own terms or by virtue of being required by Ky. Rev. Stat. Ann. § 304.12-030(2). *Cf. Patterson v. Reliance Standard Life Ins. Co.*, 986 F. Supp. 2d 1140, 1150 (C.D. Cal. 2013); *Amex Life Assurance Co. v. Superior Ct.*, 930 P.2d 1264, 1267–69 (Cal. 1997). The Judes do not advance such an argument on this appeal. In any event, 806 Ky. Admin. Regs. 12:080 required American General to provide the contestability credit. *See supra* note 3.

Jude to replace his life insurance policy. Although American General violated 806 Ky. Admin. Regs. 12:080 and may have violated Ky. Rev. Stat. Ann. § 304.12-010 by initially rescinding the entire 2015 replacement policy and significantly delaying its payment of the contestability credit, it eventually paid the Judes the contestability credit. Therefore, American General ultimately complied with its promise to provide this credit, making its statement truthful in the end. Further, Ms. Jude testified that neither she nor Mr. Jude had any communications with American General in which American General provided any misleading information.

Finally, American General did not violate Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.170(1). Kentucky's Consumer Protection Act prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. § 367.170(1). The Kentucky Supreme Court has recognized a cause of action under the Consumer Protection Act for a bad faith refusal to settle an insurance claim. *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99–100 (Ky. 2000); *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 820 (Ky. 1988). Three elements are required under Kentucky caselaw to establish such a claim:

> (1) [T]he insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Davidson*, 25 S.W.3d at 100 (alteration in original) (emphasis omitted) (quoting *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)). But the Judes cannot establish these elements. American General did not deny the Judes' claim. American General filed this suit seeking a declaratory judgment that the 2015 policy was void before Mr. Jude passed away. When American General learned of Mr. Jude's passing, it eventually (though belatedly) reinstated the 2014 policy and paid

Ms. Jude the benefits under that policy. Further, American General did not act unreasonably or with reckless disregard in seeking to rescind the 2015 policy and have it declared void. Although American General violated 806 Ky. Admin. Regs. 12:080, there is scarce caselaw on the insurance statutes and regulations at issue here and American General's actions did not "lack a reasonable basis in law or fact." The district court's ruling in American General's favor demonstrates that the company did not act in bad faith—even if its actions ultimately violated Kentucky's replacement life insurance regulation—as this shows there was room for reasonable disagreement as to the proper outcome of the contested legal issues in this case. *See Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649–50 (6th Cir. 2013); *Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Serv., Inc.*, 880 S.W.2d 886, 889–90 (Ky. Ct. App. 1994).

## III.

For the reasons stated above, we affirm in part and reverse in part, and remand this case to the district court for further proceedings in accordance with this opinion.